**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**BOARD OF TRUSTEES OF THE**
**PLUMBERS, PIPE FITTERS &**
**MECHANICAL EQUIPMENT SERVICE,**
**LOCAL UNION 392 PENSION FUND,**

       **Plaintiff,**                                              **Case No.1:08cv901**

  **vs.**

**AIRSTREAM MECHANICAL, et al.,**          **Dlott, J.**
                                                                  **Wehrman, M.J.**

       **Defendants.**

**REPORT & RECOMMENDATION[1]**
**GRANTING DEFENDANTS' MOTIONS TO DISMISS**

"What's in a name?" Shakespeare's famous quotation is particularly apt in this case. As in *Romeo and Juliet*, in this case the parties' names and relationships are paramount.

**I.  Factual and Procedural Background**

Plaintiff initiated this litigation on December 30, 2008, alleging that ten separate business entities faced joint and several "withdrawal liability" under ERISA based upon one defendant's complete withdrawal from a multiemployer pension plan. Included among the ten identified businesses were Airstream Construction, Airstream Construction, LLC and Bison Construction, LLC, despite the fact that the latter merely reflected a change of name from Airstream Construction, LLC.[2] On May 27, 2009, defendant Bison Construction, LLC alone filed an answer to the complaint.

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2]See Doc. 39 at 2.

On September 4, 2009, plaintiff moved for entry of default in light of the remaining defendants' failure to plead.  On September 9, 2009, the Clerk of Court filed an entry of default against all nine remaining defendants, including Airstream Construction and Airstream Construction, LLC.

On September 10, 2009, defendant Airstream Construction, LLC "now known as Bison Construction, LLC" filed a motion to vacate the Clerk's entry of default. On September 18, 2009, plaintiff also filed a motion to amend the entry of default in order to omit the name of Airstream Construction, LLC as an improperly alleged defaulting party, acknowledging that Airstream Construction, LLC was merely the former business  name of Bison Construction, LLC.  On September 22, 2009, the court amended the prior entry of default in order to vacate reference to Airstream Construction, LLC.  On September 22, 2009, plaintiff filed a second motion seeking to vacate the prior entry of default and to file a new entry of default to exclude *both* Airstream Construction and Airstream Construction LLC.  Doc. 47.

 On the same date, defendant Bison also filed a motion to amend the prior entry of default in order to vacate any reference to Airstream Construction, "which is a name that does not identify any legal entity" but instead is similar to "Airstream Construction, LLC," the prior name of Bison Construction LLC.  Doc. 46.  On September 24, 2009, defendant's motion was granted.  On October 26, 2009, the presiding magistrate judge filed a report and recommendation that plaintiff's amended motion for default judgment against the seven remaining entities (excluding Bison Construction, Airstream Construction, and Airstream Construction, LLC)  be granted.

In the R&R recommending entry of default, the court summarized the allegations of the original complaint:

> Plaintiff alleges that the defendants were a commonly controlled group of corporations within the meaning of Section 4001(b)(1) of ERISA, 29 U.S.C. §1301(b)(1), Section 414(c) of the Internal Revenue Code, 26 U.S.C. §414(c), and implementing regulations, Tres. Reg. §1.414(c)-2(c), and within the meaning of 26 U.S.C. §1563. As such, Defendants are jointly and severally liable to Plaintiff for withdrawal liability assessed as to Defendant Airstream Mechanical, LLC, as a result of a Collective Bargaining Agreement ("CBA") it entered into with Plaintiff which required contributions to a pension fund on behalf of participating employees. (Doc. 1). Defendants allegedly failed to submit interim withdrawal liability payments in accordance with Section 4219(c)(2) of ERISA and further failed to initiate arbitration within 60 days of written notice of withdrawal liability, pursuant to Section 4221(a)(1)(A) of ERISA. (*Id*.) Accordingly, Defendants are allegedly in default pursuant to Section 4219(c)(5)(A) of ERISA, and all outstanding amounts of withdrawal liability, plus accrued interest on the outstanding liability are due and owing pursuant to Section 4219(c)(5) of ERISA. Defendants allegedly owe Plaintiff $242, 089.00 in outstanding withdrawal liability. (*Id.* at Ex. 2).
>
> Additionally, Defendants allegedly owe Plaintiff liquidated damages pursuant to the CBA in the amount of $19,367.12, interest in the amount of $12,709.67 (Prime Rate, plus 2%) pursuant to 29 U.S.C. §1399(c)(6), and reasonable attorney's fees and costs in the amount of $20,458.45 pursuant to 29 U.S.C. §1132(g)(2)(E).

Doc. 53 at 2-3. The R&R was adopted as the order of the court and default judgment was entered against seven defendants on November 20, 2009. Although no default has been entered against defendants Airstream Construction and Airstream Construction LLC, those two entities never responded to the original complaint.

On December 3, 2009, plaintiff filed a motion to compel defendant Bison Construction, LLC - the sole answering defendant- to produce responses to plaintiff's written discovery requests. On December 9, 2009, counsel for that defendant moved to withdraw as counsel on grounds that Bison Construction had dissolved itself as of December 7, 2009, leaving no client in existence for counsel to represent. Plaintiff opposed the motion to withdraw, arguing that the purpose of dissolving Bison Construction was improper because it was done solely to avoid

discovery obligations and withdrawal liability.  Plaintiff also sought leave to file an amended complaint to name as additional defendants Bison Services, LLC and Snag Creek Rentals, LLC, two Kentucky corporations that plaintiff argued were related to Bison Construction, LLC, as well as the principal officers of those entities.

Notwithstanding opposition from the dissolved entity, Bison Construction, the presiding magistrate judge recommended granting plaintiff's motion for leave to file a first amended complaint against the allegedly related Kentucky corporations as well as their principal officers. The court reasoned that Ohio law provides "that the claims against a dissolved corporation may be pursued against the corporate officers if it is shown that the officers failed to properly wind up the corporate affairs." Doc. 62 at 4. That R&R was adopted by the court on March 23, 2010 and on March 29, 2010 plaintiff filed its amended complaint, naming in the caption as defendants the seven entities against whom default judgment previously was entered,[3] plus four additional defendants: Bison Services, LLC, Snag Creeek Rentals, LLC, Jason Meloche Sr. (hereinafter "Senior"), and Jason Meloche Jr (hereinafter "Junior").  Doc. 64.

Despite the basis for permitting the amendment, the amended complaint does not contain any claims under Ohio law that Junior or Senior "failed to properly wind up the corporate affairs" of any entity.  Also notably absent from the caption of the amended complaint is any reference to three defendants named in the original complaint: Airstream Construction, LLC, Airstream Construction and Bison Construction, LLC.   Nor is there any reference to the latter two entities in the body of the amended complaint, although a single fleeting reference is made

---

[3]The body of the amended complaint refers to the prior entry of default judgment, but inexplicably omits reference to defendant Mohawk Development.  Defendant Mohawk Development, LLC is included. See Doc. 64, ¶4.

to the "non-defaulted Defendants, AIRSTREAM CONSTRUCTION, LLC et al."

On April 19, 2010, counsel to former defendant Bison Construction, LLC - the dissolved entity as to which all references have been eliminated from the amended complaint - filed a motion to dismiss the amended complaint.  The motion explains that it is filed without client direction given the client's corporate dissolution, but to preserve the former client's arguments because the court (at that time) had not yet ruled on counsel's motion to withdraw.

On April 26, the court denied plaintiff's motion to compel discovery from the defunct Bison Construction, LLC and granted counsel's motion to withdraw from representation of the now dissolved entity.

On May 6, 2010, defendants Bison Services, LLC, Jason Meloche, Jr. and Snag Creek Rentals, LLC filed a separate motion to dismiss the amended complaint.   These three defendants argue that the amended complaint fails to state a viable claim for relief against them.    Plaintiff has filed a response in opposition to the motion, and defendants, a reply.

On June 1, 2010, defendant Jason Meloche Sr (or "Senior") filed a *pro se* Answer to the amended complaint, summarily denying all allegations.

**II. Analysis of Pending Motions To Dismiss**

**A.** **Defendant Bison Construction's Motion to Dismiss**

Defendant Bison Construction's motion to dismiss should be granted to the extent that Bison Construction remains listed on the docket sheet as a party to this litigation.  As stated, Bison Construction is not only a dissolved entity, but has not been included as a named defendant in the caption of the amended complaint. *See* Doc. 78.  For the same reasons, (former) defendants Airstream Construction and Airstream Construction, LLC should be dismissed.

    **B.**    **Motion to Dismiss of Bison Services, LLC, Snag Creeek Rentals, LLC, and Jason Meloche, Jr. ("Junior")**

        **1. The 12(b)(6) Standard**

For forty years, courts would not grant a Rule 12(b)(6) motion "unless it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99 (1957). In the last three years, however, the Supreme Court has modified that standard, holding first in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) that the "famous" no-set-of-facts formulation "has earned its retirement" and instituting a new standard that a complaint must contain facts sufficient to "state a claim to relief that is *plausible* on its face." *Id.* (emphasis added).

    More recently in *Ashcraft v. Iqbal*, 129 S.Ct. 1937, the Supreme Court expounded further:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief. " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible

> claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n] that the pleader is entitled to relief. Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 -1950 (U.S.,2009); *see also In re Travel Agent Com'n Antitrust Litigation*, 583 F.3d 896 (6th Cir. 2009)(upholding dismissal of antitrust action where plaintiffs failed to allege sufficient facts plausibly suggesting violation, rather than facts merely consistent with violation).

In light of *Twombly* and *Iqbal*, courts have taken a fresh look at the Rule 8 standard. Where only legal conclusions are pled without supporting facts, courts have not hesitated to grant motions filed under Rule 12(b)(6). *See e.g., Hollowell v. Cincinnati Ventilating Co., Inc.*, ___ F. Supp.2d ___, 2010 WL 1742114 (E.D. Ky. April 29, 2010)(dismissing conclusory ERISA claims); *see also Bird v. Delacruz*, 2005 WL 1625303 (S.D. Ohio July 6, 2005)("Plaintiffs' recitation of the definitions of "agency" and "affiliated"...does not alter the fact that their Second Amended Complaint fails to set forth any groundwork for these allegations."); *Partner's Produce, Inc. v. Newport Int'l of Tierra Verde, Inc.*, 2010 WL 2950005 (S.D. Fla July 26, 2010)(dismissing in part allegations that alleged liability based upon "mere corporate affiliation"); *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*, ___ F. Supp.2d ___, 2010 WL 2175875 (S.D.N.Y. June 1, 2010)(dismissing Security Act claims

where plaintiffs "failed to allege 'more than a formulaic recitation of the elements' of control person liability").

### 2. Analysis of Claims

In order to proceed in accordance with *Iqbal*, this court must first identity the elements of plaintiff's claims. Only then can the court examine the amended complaint to determine which allegations amount to "no more than legal conclusions," versus factual allegations entitled to the presumption of veracity.  Plaintiff's amended complaint contains two distinct claims:   a) Count 1 alleges withdrawal liability against various corporate defendants based upon "control group" theory; and b) Count 2 alleges withdrawal liability against two individual defendants based upon alter ego and veil piercing theories.

#### a. Withdrawal Liability

The general statutory framework under which plaintiff proceeds against the defendants in both Counts is located in the Multiemployer Pension Plan Amendments Act, 29 U.S.C. §1381 *et seq.* ("MPPAA"*)*

> The MPPAA amended ERISA because of Congressional concern that "existing legislation did not adequately protect plans from the adverse consequences that resulted when individual employers terminated their participation in, or withdrew from, multiemployer plans.*" Doherty v. Teamsters Pension Trust Fund*, 16 F.3d 1386, 1388 (3d Cir. 1994).  Under the statute, an employer which permanently ceases covered operations under a pension plan into which it is required to contribute is subject to "withdrawal liability," in an amount equal to its share of the unfunded vested benefits owed to individuals by the fund at the time of withdrawal. ...After an employer withdraws from a plan, the plan sponsor is vested with the authority to determine the amount of withdrawal liability....
>
> The plan sponsor must then notify the withdrawing employer of the liability, set a payment schedule, and formally demand payment. ...Within 90 days of receiving the notice, the employer may request a review of the sponsor's determination of liability....Either side may thereafter initiate arbitration proceedings....Should the employer fail to request arbitration within the statutory time periods, the amount

> of withdrawal liability assessed by the plan sponsor in the notice becomes due and owing. [29 U.S.C.] §1401(b).
>
> Regardless of whether an employer requests review from the sponsor, or initiates arbitration proceedings, it is responsible for paying interim withdrawal liability payments.... This is known as the MPPAA's "pay now, dispute later" mechanism.... Where an employer fails to make interim payments..., it is considered to be in default and the sponsor may bring a collection action to recover the unpaid interim payments....

*New York State Teamsters Conference Pension and Retirement Fund v. Doren Avenue Associates*, 321 F. Supp.2d 435, 440-441 (N.D.N.Y. 2004). The "employer" is usually the signatory to the collective bargaining agreement. Both the original and amended complaints allege that Airstream Mechanical, LLC, was the signatory to a Collective Bargaining Agreement and became bound by the Local 392 Pension Fund Declaration of Trust. Doc. 64 (amended complaint) at ¶15. The amended complaint further alleges that Airstream Mechanical allegedly effectuated a complete withdrawal from the pension fund on or about June 1, 2007. *Id.* at ¶16.

### Count I - Common Control Theory Against Corporate Defendants

Airstream Mechanical is no longer a named defendant. However, the amended complaint alleges that the named corporate defendants constitute a "single employer" and therefore are jointly and severally liable with Airstream Mechanical. *Id.* at ¶17. Thus, plaintiff's amended complaint seeks to impose liability against the corporate defendants not as signatories themselves to the CBA, but under the joint and several liability provisions of the MPPAA. "To impose withdrawal liability on an organization other than the one obligated to the Fund, two conditions must be satisfied: 1) the organization must be under 'common control' with the obligated organization, and 2) the organization must be a trade or business." *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Palladium Equity Partners, LLC*, ___ F.

Supp.2d ___, 2010 WL 2787436 (E.D. Mich. July 14, 2010)(*quoting McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F. 3d 571, 577 (7th Cir. 2007). The limited issue of whether a defendant should be defined as an "employer" based upon a common control theory is an issue for a court to determine. *See Mason & Dixon Tank Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 852 F.2d 156 (6th Cir. 1988).

In *Doren Avenue Associates*, as in this case, the Fund had claimed that the defendants were responsible for withdrawal liability because they were "affiliated" with the withdrawing employer (a non-party). The court there found that the Fund was arguably skirting "the line between having a good faith basis for ...[its] cause of action and simply pulling it out of thin air" based upon the absence of evidence linking the corporate entities. *Id.* at 443. The court explained the legal elements of the "common control" theory as follows:

> "[A]ll businesses under common control are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another." *Corbett v. MacDonald Moving Servs., Inc*., 124 F.3d 82, 86 (2d Cir. 1997); 29 U.S.C. §1301(b)(1). Whether businesses are under common control is resolved by reference to Treasury regulations, adopted under Section 414 of the Internal Revenue Code...The regulations provide three different groups the members of which are considered to be under common control and therefore responsible for each other's withdrawal liability.
>
> The *first* is a "parent-subsidiary group" consisting of "one or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization." 26 C.F.R. §1.414(c)-2(b). The *second* is a "brother-sister group"consisting of "two or more organizations conducting trades or business if (i) the same five or fewer persons...own...a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization." Id. §1.414(c)-2(c). ....A 'controlling interest' is defined as ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote of [a company], or at least 80% of the total value of shares of all classes of stock.... 'Effective control' is defined as ownership of "stock possessing more than 50% of the total combined

>voting power of all classes of stock" entitled to vote or more than 50% of the total value of shares of all classes of sock....

*Id.* at 444-445 (quotations and footnote omitted).

>The *third* is a "combined group" consisting of "any group of three or more organizations", if (1) each such organization is a member of either a parent-subsidiary group...or a brother-sister group..., and (2) at least one such organization is the common parent organization of a parent-subsidiary group...and is also a member of a brother-sister group....

*Id.* at n.8. The court granted summary judgment to the defendant companies, largely because plaintiff had failed to dispute defendants' proof that they did not fall within any definition of commonly controlled companies, given their respective percentages of ownership and voting control.

Although this case differs procedurally in that it concerns a motion to dismiss, the amended complaint fails to contain even minimal allegations concerning ownership and/or voting control to support a "control group" theory of liability against defendants Bison Services, LLC or Snag Creek Rentals, LLC. Plaintiff's only allegation against these two defendants is in the form of a legal conclusion - that they, together with six of the entities against whom default judgment was previously entered, "(hereinafter collectively referred to as the 'AIRSTREAM CONTROLLED GROUP') are or were doing business in the States of Ohio and Kentucky." *See* Doc. 64. ¶9. This allegation alone connects Bison Services, LLC and Snag Creek Rentals, LLC to the "Group" of entities alleged to be jointly and severally liable to the plaintiff. Plaintiff also summarily alleges that the Airstream Controlled Group ("Group") is "a controlled group of corporations" under ERISA. *Id.* at ¶10. Because these allegations state nothing more than a legal conclusion devoid of any factual support, they are not entitled to a presumption of veracity under the *Iqbal* standard.

As explained by the court in *Doren Avenue Associates,* the relevant regulation provides for single employer treatment of multiple organizations only where (1) one organization owns 80% or more of another organization ("parent-subsidiary controlled group") or (2) five or fewer natural persons...own 80% of two or more organizations ("brother-sister controlled group"). In addition, the *same* "five or fewer persons" must possess "effective control" over *each* of the related organizations, meaning that they must own more than 50% of the stock of each organization. *See CMSH Co. v. Carpenters Trust Fund for Northern California*, 963 F.2d 238, 241 (9th Cir. 1992); *see also generally United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 25 (1982)(discussing ownership requirement for common control test).

Plaintiff urges this court to find that the single allegation that both Junior and Senior were shareholders and principals in "several" unidentified Group entities is sufficient to treat Bison Services and Snag Creek Rentals as part of the Group. But plaintiff makes no allegation that Junior and Senior *contemporaneously* owned any specific Group entities, much less that Junior's, Bison Service's, or Snag Creek Rental's shares met the 80% and 50% thresholds required by 26 C.F.R. §1.414(c)-2(c)(1)-(2).

Plaintiff's response to defendants' motion to dismiss contains some additional allegations, but does little to advance plaintiff's cause. Plaintiff states that in November 2006, Senior "assigned his membership interest in Airstream Construction, LLC to his son, Jason Meloche Jr., who then changed the corporate name [to] Bison Construction, LLC." Doc. 83, Memorandum at 3. Plaintiff further claims that Junior is listed as the managing member of Bison Construction, LLC, Bison Services, LLC, and Snag Creek Rentals, LLC, all of which are alleged to be included in the Group. Plaintiff also alleges that "[s]hortly *after* the assignment [of

-12-

Airstream *Construction*, LLC], Airstream *Mechanical*, LLC ceased contributing to the Pension Fund...." *Id.* (Emphasis added). For the first time, plaintiff also alleges that most or all of the various Group entities perform the same type of work, *see id.* at 2, 11, and that Bison Services, LLC continued the operations of Bison Construction, LLC after the latter entity was dissolved. *See id.* at 5-6, 12.

Bison Services and Snag Creek Rentals argue persuasively in a reply memorandum[4] that the new allegations contained in plaintiff's response confirm that they **cannot** be held liable as part of the Group entities, because Airstream Mechanical did not incur any liability to plaintiff until *after* Senior transferred his interest in a different Group entity, Airstream Construction, LLC, to Junior. Plaintiff's response also makes clear that Bison Services and Snag Creek Rentals were not part of the Group owned by Senior *at the time that Group incurred withdrawal liability.*

The regulations and case law interpreting them are unequivocal that for two organizations to be under "common control," their owners must be substantially the same at the time the liability is incurred. Here, not only is the complaint devoid of such key allegations, but Bison Services and Snag Creek Rentals are alleged to have been solely owned by Junior.

Nor can plaintiff rely on the Meloches' familial relationship to satisfy the "common control" requirement. According to 26 C.F.R. §1.414(c)-4(b)(6)(ii), a father does not constructively own an organization owned by his adult child unless the father "is in effective control" of that organization. In this case, the amended complaint makes no such allegations

---

[4]Plaintiff initially moved to strike defendants' reply memorandum as untimely, but subsequently withdrew that motion. As plaintiff notes in its notice of withdrawal, Doc. 88, defendants' reply was in fact timely filed.

regarding Senior's "effective control" of Bison Services or Snag Creek Rentals, just as it contains no allegations that Junior and Senior shared common ownership or control over any other Group entity. *Contrast, e.g., Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, 2010 WL 2521091 (D.N.J. June 11, 2010)(denying motion to dismiss, finding plaintiffs had alleged detailed facts showing that parties were "so integrated that they were one and the same" including but not limited to allegation that seven individuals shared ownership in each corporate entity, distinguishing case where corporate entities "did not even exist at the time the ERISA violations occurred" ).

### Count 2 - Alter Ego and Veil Piercing Against "Junior"

Although the "common control" theory permits business entities to be held liable as a single "employer," the same theory cannot be used against the individual defendants. "Because the MPPAA refers only to 'trades or businesses' under common control, individual shareholders or officers are generally not liable for withdrawal liability under the MPPAA unless they can be considered sole proprietorships or can be reached through an alter ego or veil piercing theory." *Brown v. Astro Holdings, Inc.*, 385 F. Supp.2d 519, 528 (E.D. Pa. 2005); *see also Solomon v. Klein*, 770 F.2d 352, 353-54 (3d Cir. 1985)(holding individual could not be liable as "employer" absent allegations that corporate veil should be pierced or that employer was alter ego of the defendant); 29 C.F.R. §4001.3(a)(3). Presumably for this reason, Count 2 of plaintiff's amended complaint seeks to hold the two individual defendants responsible for Airstream Mechanical, LLC's withdrawal liability based on alter ego and/or veil piercing theories.[5]

---

[5]Plaintiff's complaint does not seek to hold the corporate defendants liable as alter egos or under veil piercing theories. At least one court has suggested that veil piercing theories are inapplicable in the absence of proof that a corporate entity is part of a control group based upon

Plaintiff alleges that Jason Meloche Senior "was a shareholder and Principal Officer/Managing Member of Airstream Mechanical, [non-party but signatory] Airstream Mechanical, LLC and several of the Airstream Controlled Group entities," *see id.* at ¶ 11, and that defendant Junior was a shareholder and Principal Officer/Managing Member of Airstream Contracting, LLC, Bison Services, LLC, Snag Creek Rentals, LLC and "'several' of the Airstream Controlled Group entities." *Id.* at ¶12.

The amended complaint further alleges "on information and belief" that Senior and Junior "transferred and commingled assets between the Airstream Controlled Group entities to avoid paying withdrawal liability and other contractually required contributions" to the plaintiff. Doc. 64 at ¶36. Again, without specific factual detail and only "on information and belief" plaintiff alleges that father and son failed to sufficiently capitalize the Group entities, that they failed to observe corporate formalities, failed to keep adequate corporate records, and that they operated the Group "as a facade for their own personal benefit" such that the two individuals should be considered the alter-egos of all of the Airstream Controlled Group entities. *Id.* at ¶¶36-42.

Plaintiff has never alleged that Junior owned and controlled Airstream Mechanical, LLC, the entity owned and/or controlled by Senior and as to which default judgment has already been entered. The only "Group" entity as to which default judgment was previously entered concerning which Junior is alleged to have been a shareholder and principle officer/ managing

---

stock ownership. *See e.g.*, *Brown v. Astro Holdings, Inc*., 385 F. Supp.2d 519 (E.D. Pa. 2005)(criticizing plaintiffs for including very few details of the alleged relationships between the corporate defendants that made up the "family conglomerate" and the non-party signatory to the collective bargaining agreement).

member of is Airstream Contracting, LLC. While the complaint alleges that Junior was shareholder and principal/managing member of "several" other Group entities, the amended complaint never specifies *which* entities.[6]

As drafted, the amended complaint fails to state a colorable claim of personal liability against Junior, under either an alter ego theory of liability or some other theory under Ohio law. Other than conclusory allegations that summarize the legal elements of the claims, no specific factual allegations support a claim of either alter ego liability or piercing the corporate veil to impose liability upon Junior. Perhaps most importantly, a prerequisite to alter ego liability is the liability of the related corporate entity. Bison Construction is no longer a named defendant, and the only two named defendants that Junior is specifically alleged to own, as discussed above, cannot be held liable for withdrawal liability.

        **b.**        **Adequate Notice?**

While not argued by defendants, this court notes that the present record is unclear as to whether all defendants received notice of the alleged withdrawal liability of Airstream Mechanical, LLC. Plaintiff alleges that it notified the "Group" (collectively) on January 16, 2008, April 18, 2008, and finally on August 8, 2008 of the amount of the withdrawal liability. Doc. 64 at ¶18-23. Attached to the complaint is a single piece of correspondence evidencing such notice - a letter dated January 16, 2008 and addressed to Jason Meloche Jr. Re "Bison Construction, LLC." The letter reflects plaintiff's position that "Bison Construction, LLC...is ... liable for Airstream's withdrawal liability based on its close relationship with Airstream

---

[6] In fact, plaintiff never identifies in either the original or amended complaint who owns or controls four of the entities against which default judgment was previously entered.

[Mechanical, LLC]" either as "a successor or parent corporation" or because Airstream Mechanical is within its "control group."

Bison Construction, LLC is no longer a defendant. Although notice to one entity may be constructive constitute notice to all entities in a control group, *see IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 127 ($3^d$ Cir. 1986), defendants who are *not* members of the control group at the time notice is provided are not deemed to have received notice. *See Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591 (7th Cir. 2008). In this case, the complaint does not include factual support for the allegation that Bison Services, Snag Creek, or Junior received constructive notice - because there are no factual allegations to support plaintiff's single legal conclusion that they were part of the "Group" at the time notice was provided.

    3.    **Further Amendment**

Should this court find the amended complaint to be deficient in any respect, plaintiff seeks leave to file a second amended complaint. Perhaps, if plaintiff had provided any factual support for its conclusory legal allegations, consideration of plaintiff's request would be appropriate. However, plaintiff has not only failed to provide *any* factual support for its legal theories against Bison Services, LLC and Snag Creek Rentals, LLC, but the scant allegations in the amended complaint combined with statements in its responsive memorandum make clear that he could not amend to allege the ownership and control required to impose control group liability upon Bison Services, LLC, and Snag Creek Rentals, LLC. Absent such liability, plaintiff also cannot hold Jason Meloche, Jr. responsible for the debt of his father's defunct corporation.

### III.  Recommendations

For the reasons stated herein, **IT IS RECOMMENDED:**

1.  That the motion of Defendant Bison Construction, LLC to dismiss [Doc. 68] be **granted**, and that defendants Airstream Construction and Airstream Construction, LLC also be dismissed as non-parties to the amended complaint;

2.  That the motion of Defendants Bison Services, LLC, Snag Creek Rentals, LLC and Jason Meloche, Jr. to dismiss [Doc. 75] be **granted** with all claims against those defendants to be dismissed.


DATE: August 11, 2010              s/ J. Gregory Wehrman
                                    J. Gregory Wehrman
                                    United States Magistrate Judge

**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**BOARD OF TRUSTEES OF THE PLUMBERS, PIPE FITTERS & MECHANICAL EQUIPMENT SERVICE, LOCAL UNION 392 PENSION FUND,**

**Plaintiff,** **Case No.1:09-cv-455**

**vs.**

**AIRSTREAM MECHANICAL, et al.,** **Dlott, J.**
**Wehrman, M.J.**

**Defendants.**

## NOTICE

Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).